FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WEBXCHANGE INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 08-132-RGA |
| DELL INC., et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| WEBXCHANGE INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 08-133-RGA |
| FEDEX CORPORATION, et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

*signature* 
ANDREWS, U.S. DISTRICT JUDGE:

Before the Court are issues relating to the Plaintiff's continuing difficulties in obtaining counsel to prosecute this action.

The Plaintiff is WebXChange Inc. It has sued the defendants – Dell and Federal Express – claiming patent infringement of three patents (nos. 5,778,178, 6,212,556, and 7,340,506) held by the Plaintiff.

The Plaintiff is a corporation. An artificial entity can only appear through counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993).

Plaintiff filed this action on March 5, 2008. The Plaintiff was represented by two law firms – Kasowitz, Benson (out-of-town counsel) and Morris Nichols (Delaware counsel). The parties participated in pretrial litigation. The docket reflects 208 docket entries through January 20, 2011. The docket entries seem to be not atypical for patent litigation.

The 209th docket entry, on February 23, 2011, was that of the Plaintiff's two law firms moving to withdraw. They cited an "irreconcilable–and total–breakdown in the client-lawyer relationship." (D.I. 209, ¶ 7). There was a dispute over money. (D.I. 261, p.11). WebXChange objected to the attorneys withdrawing unless, among other things, they returned $568,000 that had been escrowed, paid $454,000 of expenses, and paid WebXChange's principal $4,000,000 for her time. (D.I. 213, p.3). On April 1, 2011, attorneys Salem Katsh (out-of-town counsel) and

the firm of Ratner Prestia[1] (Delaware counsel) entered appearances on behalf of Plaintiff, and, shortly thereafter, Kasowitz and Morris Nichols withdrew. Some minimal discovery continued. The scheduling order was amended after Plaintiff's counsel so moved. Then, on July 6, 2011, Katsh and Ratner Prestia moved to withdraw, citing an "irreconcilable breakdown in the client-lawyer relationship." They further stated that the client had "taken actions that constitute effective discharge" of counsel. (D.I. 243, ¶ 8). The Court granted the motion, and set a deadline of August 25, 2011, for the Plaintiff to retain counsel, stating that a "corporation or other artificial entity cannot represent itself." The order further stated: "Failure of WebXchange to comply with this order shall be considered a failure to prosecute and the case shall be dismissed." (D.I. 244). On July 15, 2011, the Plaintiff filed (not through counsel) a letter seeking to extend scheduling deadlines. (D.I. 248). The Court refused to consider the letter, noting, "A non-lawyer may not represent WebXChange." (D.I. 250).

On August 8, 2011, Grant & Eisenhofer (Delaware counsel) and George Pazuniak (Delaware counsel, and formerly of Ratner Prestia) entered appearances for Plaintiff. The Court held a teleconference on September 6, 2011. The next day both Grant & Eisenhofer and Pazuniak moved to withdraw, citing an "irreconcilable breakdown in the attorney-client relationship." (D.I. 254, ¶ 8). The motion further explained that the law firms (in light of the Plaintiff's "difficulties" with its previous counsel) had entered into a detailed retainer agreement with Plaintiff, and that (notwithstanding the agreement) the Plaintiff had "failed to substantially fulfill an obligation to [the law firms] regarding [their] services" and that the Plaintiff's actions

---

[1] WebXChange later submitted an affidavit stating that Ratner Prestia had entered the appearance without WebXChange's authority. (D.I. 257, Arunachalam Affidavit, ¶ 4; D.I. 261, p. 15). That seems unlikely, but there is no need to decide its truth.

3

would "render the representation unreasonably difficult and financially burdensome" to the lawyers. (D.I. 254, ¶ 8). On September 8, 2011, the Court held a teleconference, and permitted Grant & Eisenhofer and Pazuniak to withdraw. The Court issued an order: "on or before November 9, 2011, plaintiff shall show cause why the above-captioned actions should not be dismissed with prejudice for failure to prosecute... FAILURE TO TIMELY RESPOND TO THIS ORDER SHALL RESULT IN DISMISSAL OF THE ACTION." (D.I. 256). The next event of significance in the docket was a limited appearance of another lawyer for the sole purpose of filing a "Motion for Extension of Time to Respond to Order to Show Cause." It asked for an additional 90 days for Plaintiff to obtain counsel. The Defendants opposed the motion, and requested dismissal of the case with prejudice.

The Court held a conference with the limited appearance attorney and defense counsel on December 12, 2011. During the conference, patent counsel from Texas participated, and indicated that they would be able to state by January 17, 2012, whether they would appear for the Plaintiff. The Court stated that if some counsel did not enter an appearance for Plaintiff by January 17, 2012, and deposit $100,000 with the Clerk to compensate the Defendants for their expenses caused by the delay, the case would be dismissed with prejudice on January 18, 2012. The reasons for this ruling follow.

The Plaintiff has been in default of its obligations to prosecute the case since July 6, 2011. It has been without counsel to prosecute this case since then.[2] The Court issued a show cause order as to why the case should not be dismissed. The Plaintiff responded to this by

---

[2] The entries of Grant & Eisenhofer and Pazuniak on August 11, 2011, were so quickly followed by their motions to withdraw that the case was not advanced at all while they were in it.

4

explaining that additional lawyers and/or law firms would not take the case, suggesting that it was a money issue (D.I. 257, Motion ¶¶ 4-6), combined with the difficulty of hiring lawyers after three sets of lawyers had already withdrawn (D.I. 257, Motion ¶ 9; Arunachalam Affidavit ¶ 3). An additional affidavit from a patent lawyer, who knows WebXChange's principal, states that he agreed to represent WebXChange and came to terms to do so on October 27, 2011, and, having done so, recognized that he could not take on the representation.[3] The additional affidavit states that two other "litigators" were approached between October 27 and November 6, and also declined to represent WebXChange. No details are provided as to whether these other two litigators made their decisions in fifteen minutes or less, and, in any event, there's no evidence there were any serious discussions between either of them and WebXChange.

The standard for dismissing a case for failure to prosecute involves consideration of relevant factors, bearing in mind that dismissals with prejudice are a last resort and disfavored. The Third Circuit has held that a district court should balance the following factors:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).

---

[3] The attorney's agreement to terms within a month contrasts with the length of time the present Texas patent counsel are taking. I do not question that the Texas counsel need to spend the time that they are spending, but it does make me dubious of the claim that counsel had an agreement to represent WebXChange and then backed out for no explained reason within days.

There are numerous cases applying *Poulis*. An illustrative case is *Opta Systems, LLC v. Daewoo Electronics America*, 483 F.Supp.2d 400 (D.N.J. 2007). It bears some similarity to the present case, in that a corporation sued, through counsel, another corporation, and prosecuted the case until counsel was discharged. After four months of the plaintiff not retaining new counsel, and not responding to the Court, the Court dismissed with prejudice for failure to prosecute. Of course, *Opta* is dissimilar in the sense that the corporation gave no indication during the four months that it wanted to continue, whereas here the corporation does want to continue, but seems unable to do the things that would allow it to continue.

The record is clear that the Plaintiff is personally responsible for its lack of counsel. Plaintiff may or may not be able to pay counsel. Plaintiff claims to have funds but to not be able to get to them. It's clear that Plaintiff's principal is a difficult personality who has clashed with multiple well-respected attorneys and law firms, see D.I. 261, pp. 19-21, and is not good about following the directions of the Court. (See D.I. 248). When the various law firms and lawyers have all moved to withdraw for irreconcilable differences, it is the responsibility of the Plaintiff. The only reasonable interpretation of the cryptic withdrawal motion of the last set of attorneys is that the Plaintiff reneged on some financial arrangement.

The prejudice to the defendants arises from the delay. As counsel noted in the December 12th conference, the Defendants continue to spend money on lawyers and for special services (an escrow company and a database company – see D.I. 261, pp. 27-28) related to maintaining the discovery. Defense counsel estimate their clients' out-of-pocket expenses as being in the $40,000 to $50,000 range during the period since July 6, 2011. Even if the expenses upon review of billing records are less than that, counsel were also right to note that in complicated litigation,

6

counsel have to do a certain amount of reinventing-the-wheel when there are significant delays in the case during which nothing is happening (see D.I. 261, p.31), and any future reinvention will be billed to their clients.

There is some recent history of dilatoriness. It seems as though the efforts to obtain counsel are put on the back-burner until a deadline is approaching. For example, there's no evidence that the Plaintiff took any action in regard to the Court's September order to obtain counsel until October. The Plaintiff did not communicate much sense of urgency to the Texas patent counsel who are now contemplating representation (or, if it did, was satisfied to allow counsel three months to review the case). The defendants have stated that there is a longer history of dilatoriness, see D.I. 258, p.7, fn. 6, and even the Plaintiff conceded that "nothing has happened in the case" since February 2011, but it is not clear to me that anything occurring before February 2011 is the Plaintiff's responsibility. Thus, while the recent dilatoriness is significant, and cause for great concern, I cannot find that it is a long-standing pattern.

The Plaintiff's conduct has been willful (its actions are directly responsible for it being unrepresented), but the record does not establish any bad faith. The record is pretty clear that the Plaintiff has its own ideas about how to do things, and has made agreements with its lawyers that it does not keep.

The only alternative sanction the Court considered was financial. It does not make sense to me that if new counsel do enter an appearance on January 17, 2012, the case should just go on as if the last six-to-eleven months had not happened. An intermediate sanction that would allow the case to continue is a financial one. If the case has a value (and there is talk in the papers about finding "investors") and the investors can put up funds to compensate the defendants for

7

the Plaintiff's misbehavior to date, there would be funds for sanctions. Or, as the Plaintiff has alleged, if there are funds being held in escrow, see D.I. 261, p.11, lines 11-12, those funds could be used for sanctions. Thus, the Court is conditioning continuance of this litigation on the payment of sanctions, and will require the deposit of $100,000 into the Clerk's Office by January 17, 2012. There is no need to run up the defendants' expenses by requiring proof of their expenses at this time. The money will be escrowed, and the Defendants can submit proof of their expenses after January 17th, on a schedule to be named. If their expenses are less than $50,000 for either or both of the two defendants, any excess funds will be returned.

The actual meritoriousness of the claims is hard to evaluate without having a trial or some sort of evidentiary hearing. The *Poulis* factor, however, does not require evidence. Instead, a claim is "deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff."[4] *Poulis*, 747 F.2d at 869-870. Using that standard, and having read the Complaint, I think I would have to conclude that the claim is meritorious. I say this notwithstanding that as a factual matter, there is little likelihood that the claims are meritorious, since during reexamination proceedings, the Patent Office has issued "final rejection" of two of the patents and "non-final rejection" of the third.

Thus, while the *Poulis* factors mostly suggest dismissal is appropriate, there is an intermediate step which I think should be tried, namely the imposition of a monetary sanction.

---

[4] It cannot be the case that *Poulis* only applies to cases that should be lost on the pleadings anyway.

Should the monetary penalty not be posted by January 17th, then the case will be dismissed with prejudice.

        An appropriate order will be entered.